IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION


CALEB-MICHAEL FILES ) 
 )
and )
 )
JESSICA MAYO, )   NO.  4:17-cv-304
 )
                Plaintiffs, )
 )
        v. )
 )
RHONDA HAMM-NIEBRUEGGE, in her )
official capacity as Director of Airports at )
Lambert International Airport in St. Louis, )
Missouri, )
 )
                Defendant. )


## COMPLAINT

### INTRODUCTION

1.       This is a civil rights action filed by Caleb-Michael Files and Jessica Mayo

(collectively, the "Plaintiffs"), who—like thousands of Americans across the country—

wish to participate in peaceful expressive activity near an international airport in protest

of an executive order signed Friday, January 27, 2017, banning Syrian refugees

permanently, nationals of seven countries including legal permanent residents and visa-

holders temporarily, and suspending the application of the United States refugee program

even as to vetted entrants currently in transit.

2.       Plaintiff Files and others have been informed by Defendant Rhonda

Hamm-Niebruegge, Director of Airports at Lambert International Airport in St. Louis,

Missouri ("Airport"), that they must have a permit and comply with Airport policies that

give the Director unfettered discretion to permit or deny expressive activity and to place

1

arbitrary limits on the activity. The Director has informed Plaintiffs that she will limit the protest to 50 persons, limit the protest to 1 hour, limit the protest to one section of one public sidewalk, disallow protesters from entering any building for any purpose, and expect compliance with Airport policies that prohibit protesters from stopping or conversing with passersby.

3.      Plaintiffs have been informed by Director Hamm-Niebruegge and other Airport staff that if Plaintiffs fail to comply with these rules, they will be subject to arrest even though Plaintiffs violate no law and will not encumber the passage of persons or vehicles.

4.      Plaintiffs, who plan to demonstrate on the public sidewalk abutting the Airport, challenge the prior restraint on their expressive activity and the Airport policies that give complete and unfettered discretion to the Director of Airports to control their speech in violation of the First and Fourteenth Amendment of the United States Constitution.

5.      Plaintiffs ask this Court to enjoin Defendant and her officers, employees, and agents from enforcing a discretionary and arbitrary prior restraint to limit their expressive activity on the public sidewalk in front of the Airport and to threaten arrest based on the number of protesters, the duration of their protest, their location on the public sidewalk, or their stopping or conversing with interested passersby who initiate conversation. Further, Plaintiffs request this Court to declare the practices described unconstitutional on their face and as applied, and to award nominal damages.

### *JURISDICTION AND VENUE*

6.      This Court has original jurisdiction pursuant to 28 U.S.C. § 1331 over Plaintiffs' civil action arising under the Constitution of the United States.

7. In addition, this Court has original jurisdiction pursuant to 28 U.S.C. § 1343(a)(3) to redress the deprivation, under color of state law, of any right, privilege, or immunity secured by the Constitution of the United States.

8. Venue lies in the United States District Court for the Eastern District of Missouri because a substantial part of the events giving rise to Plaintiffs' claims occurred in the City of Saint Louis, Missouri.  28 U.S.C. § 1391(b)(2).

9. Divisional venue is in the Eastern Division because the events leading to the claims for relief arose in the City of Saint Louis, Missouri.  E.D. MO. L.R. 2.07(A)(3), (B)(1).

### PARTIES

10. Plaintiff Caleb-Michael Files is a resident of St. Louis, Missouri.

11. Plaintiff Jessica Mayo is a resident of St. Louis, Missouri.

12. Defendant Rhonda Hamm-Niebruegge is the Director of Airports at Lambert International Airport. She is sued in her official capacity. The Airport is the property of the City of St. Louis, Missouri, which is a charter city and municipal corporation of the State of Missouri.

13. Defendant and her officers, employees, or agents acted under color of state law at all times relevant to this Complaint.

### FACTS

**A.    Background**

14. On Friday, January 27, 2017, President Donald J. Trump signed an executive order banning all citizens of seven Muslim-majority countries from entering the United States for 90 days; banning all refugees from entering the United States for 120 days; banning Syrian refugees from ever entering the United States; and ordering a

review of various facets of immigration policy to consider broadening the ban to other countries or categories of individuals.

15.     Many people living in the United States and around the world have criticized the executive order.

16.     As a result, there have been peaceful protests at or near airports in many major cities across the country, including New York City, Buffalo, Boston, Washington, D.C., San Francisco, Los Angeles, Denver, Dallas, Seattle, Philadelphia, and Portland.

17.     More protests are scheduled at other airports, including today's protest at Lambert International Airport in St. Louis as well as a protest at Kansas City International Airport.

18.     News reports about the protests make clear that they have been peaceful and nondisruptive despite the gathering of, in some cases, several thousands of people.

19.     Airport staff have told would-be protesters at Kansas City International Airport that there are no restrictions on their speech and all protesters will be allowed to participate.

20.     At protests across the country, demonstrators have been voicing their opinions about issues of public concern, including immigration policy, refugee policy, executive power, humanitarian aid, the rule of law, and constitutional rights.

**B.     Lambert Airport Policies**

21.     Plaintiff Caleb-Michael Files, along with Lindsay French, planned to protest today at Lambert International Airport.

22.     On Friday, January 27, 2017, French created a Facebook event page to alert others that she was going to protest.

4

23.    On Saturday, January 28, Files became an administrator for the Facebook event page.

24.    On Saturday, January 28, Plaintiff Mayo learned about the planned protest through the Facebook page and planned to attend.

25.    On Saturday, January 28, Files and French both spoke with Airport staff in preparation for attending the protest.

26.    On Saturday, January 28, Airport staff first told French they could not issue a protest permit over the weekend.

27.    Airport staff also told French protesters who appeared without a permit would be arrested and subject to criminal charge.

28.    Later on Saturday, January 28, Director Hamm-Niebruegge told French she would issue a permit if French would provide her name and contact information, limit the protest to 50 people, and limit the protest to a specific location on the public sidewalk.

29.    On Saturday evening, Plaintiff Files spoke with Director Hamm-Niebruegge. Again, the Director stated that protesters would be limited to a particular section of the public sidewalk outside the Main Terminal (Terminal 1)—the section between Entrances 5 and 6 at the Departures area—and that if more than 50 people came to the protest or if anyone went into the building for any reason, they would be subject to arrest.

30.    Later during the conversation, Director Hamm-Niebruegge stated that she might consider giving Files two sections of sidewalks including a second section on the public sidewalk on the lower level outside the Arrivals area, which in her view would allow up to 100 protesters.

31.     Files told Director Hamm-Niebruegge that the number of persons who had "RSVPed" on the Facebook even page far exceed 100.

32.     As of filing, 571 people have reported that they will attend the protest, and 2,429 people have stated that they are "interested" in attending the protest, which is typically understood to mean they might attend.

33.     The public sidewalk outside the Departures counters is just under one-quarter mile long. **True and correct copies of photographs of the public sidewalk and plazas are attached to the Complaint as Group Exhibit 1.**

34.     The Director stated that they would need to cycle in and out via a bus or some other transport.

35.     On Sunday morning, January 29, 2017, the Director provided Files with Airport picketing policies, which she plans to apply to protesters even though they plan to confine their protest to the public sidewalk outside the Airport.

36.     These policies define "demonstrating" as "the act of gathering on Airport property by one or more persons or entities to inform the public of general activities or policies that concern them" and "pickets" as "a person or group of people located on the Airport's property who intend to demonstrate, picket or strike."

37.     The Airport policies limit protesters to certain content except with written permission from the Director; require that "persons other than pickets may not enter any building if they have any identification displayed indicating that they are demonstrators or sympathizers"; prohibit the distribution of literature; and prohibit "congregating in or about the picket area."

38.     The Airport policies require the "individual responsible for the picket line" to "give his name and telephone number to the Airport Police."

39.     The Airport policies require demonstrators and picketers to obtain written approval from the Director and return an approved application before beginning their demonstration.

40.     The Airport policies require that the Director "approve the number of pickets permitted in any one location, may change location or pickets, increase or decrease the allowed number of pickets at one location, or rescind any such permission that was previously granted."

41.     The Airport policies prohibit picketers from "stop[ping] or convers[ing] with the public, including pedestrians, workers and vehicles, for any purpose whatsoever."

42.     The Airport policies require someone to sign a broad indemnification of the City of St. Louis and the Airport for any claims related to the Airport's "Rules and Regulations," including investigation of any claims and the payment of attorneys' and expert fees.

43.     The Airport policies require someone write out a "purpose or general description of picket or strike activities."

### COUNT I
### *Violation of First and Fourteenth Amendments*
### *to the United States Constitution*

44.     Plaintiffs repeat, re-allege, and incorporate by reference the allegations in the foregoing paragraphs of this Complaint as if set forth here verbatim.

45.     Protesting on a matter of public concern is a form of expressive communication subject to First Amendment protection.

46.     Sidewalks are a traditional public forum subject to the highest level of First Amendment protection.

47.     Defendant's policies and actions directly infringe upon and chill reasonable persons from engaging in activity that is protected by the First Amendment, including peaceful assembly on a public sidewalk and standing still on a public sidewalk to protest and to engage in other constitutionally protected speech.

48.     Defendants have deprived Plaintiffs of their rights under the First Amendment to the United States Constitution, which are incorporated through the Fourteenth Amendment.

49.     Furthermore, the Airport policies are an unconstitutional, indefinite, and discretionary prior restraint because they require a permit before engaging in speech and they allow for arbitrary and/or discriminatory permit denials and provides for no definite time limit for a decision to be made.

50.     Furthermore, the Airport policies are unreasonably burdensome because they require an individual to be responsible for others' expressive activity and to broadly indemnify the City of St. Louis and the Airport.

51.     Unless restrained by this Court, Defendant will arrest Plaintiffs and other protesters who appear at the Airport to protest the executive order unless there are fewer than 50 people total and if Plaintiffs stop or converse with interested passersby and if Plaintiffs are on parts of the public sidewalk not previously approved by the Director.

8

52.     Defendant has no interest sufficient to justify the prior restraint or the limits on Plaintiffs' expressive activity.

53.     Defendant's threat of arrest to Plaintiffs and other protesters who are violating no law to refrain from protesting on public sidewalks has made Plaintiffs reasonably fear arrest and has chilled their speech.

54.     Plaintiffs Files and Mayo have been chilled from engaging in constitutionally protected speech because they reasonably fears arrest and/or prosecution.

WHEREFORE, Plaintiffs respectfully request the following relief:

A.     Upon proper motion, issue a temporary restraining order and preliminary injunction (1) prohibiting Defendant, her officers, employees, or agents, and those acting on her behalf or in concert with her from ordering individuals who are violating no law to refrain from protesting on public sidewalks either by moving or standing still or conversing with interested passersby, threatening them with arrest for non-compliance, or arresting them; and (2) prohibiting Defendant, her officers, employees, or agents, and those acting on her behalf or in concert with her from purporting to enforce the arbitrary restrictions on protests in the Airport policies.

B.     Enter declaratory judgment, pursuant to 42 U.S.C. § 1983, that Defendant's practices and policies described in the Complaint violate the Constitution;

C.     Enter a permanent injunction (1) prohibiting Defendant, her officers, employees, or agents, and those acting on her behalf or in concert with her from ordering individuals who are violating no law to refrain from

9

protesting on public sidewalks either by moving or standing still or conversing with interested passersby, threatening them with arrest for non-compliance, or arresting them; and (2) prohibiting Defendant, her officers, employees, or agents, and those acting on her behalf or in concert with her from purporting to enforce the arbitrary restrictions on protests in the Airport policies.

D.      Award Plaintiffs nominal damages against Defendant;

E.      Award Plaintiffs costs, including reasonable attorneys' fees, pursuant to 42 U.S.C. § 1988 or any other applicable law; and

F.      Allow to Plaintiffs such other and further relief as is just and proper under the circumstances.

Respectfully submitted,

/s/ Anthony E. Rothert
Anthony E. Rothert, #44827MO
Jessie Steffan, #64861MO
AMERICAN CIVIL LIBERTIES UNION
      OF MISSOURI FOUNDATION
454 Whittier Street
St. Louis, Missouri 63108
Telephone:     (314) 652-3114
Facsimile:     (314) 652-3112
trothert@aclu-mo.org
jsteffan@aclu-mo.org

Gillian R. Wilcox, #61278MO
AMERICAN CIVIL LIBERTIES UNION
      OF MISSOURI FOUNDATION
3601 Main Street
Kansas City, Missouri 64111
Telephone:     (816) 470-9938
Facsimile:     (314) 652-3112
gwilcox@aclu-mo.org

**ATTORNEYS FOR PLAINTIFFS**

10